## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| ECHO WINDY CITY TRANSPORTATION, LLC; and ARIES CHARTER TRANSPORTATION, INC. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. |
| PRICE FOR LIMO, LLC; and PRICE 4 CHARTER BUSES AND LIMOS, LLC | ) ) ) ) | |
| Defendants. | ) ) ) | |

## VERIFIED COMPLAINT AT LAW

Plaintiffs ECHO WINDY CITY TRANSPORTATION, LLC ("Windy City"); and

ARIES CHARTER TRANSPORTATION, INC. ("Aries") (collectively referred to as

"Plaintiffs"), by and through undersigned counsel, for their complaint against Defendants PRICE

FOR LIMO, LLC ("PFL") and PRICE 4 CHARTER BUSES AND LIMOS, LLC ("P4L")

(collectively referred to as "Defendants"), allege the following:

## NATURE OF ACTION

1. This is an action for unfair competition under the Lanham Act, 15 U.S.C. §1125(a); consumer fraud under the Illinois Consumer Fraud and Deceptive Business 815 ILCS 505/1 et. seq.; deceptive trade practices under 815 ILCS § 510 of the Illinois Uniform Deceptive Trade Practices Act; unfair competition and unjust enrichment under the common laws of the State of Illinois, whereby Plaintiffs are seeking an injunction against the illegal activities of Defendants, in addition to monetary damages.

1

**PARTIES**

2.      Plaintiff Echo Windy City Transportation, LLC is a Texas limited liability company with its principal place of business at 2801 South 25th Avenue, Broadview, Illinois 60155.

3.      Plaintiff Aries Charter Transportation, Inc. is an Illinois corporation with its principal place of business at 924 West 75th Street, Suite 120, Naperville, Illinois 60565.

4.      Upon information and belief, Defendant Price For Limo LLC is a Florida limited liability company with its principal place of business at 990 Stinson Way, Suite 201, West Palm Beach, Florida 33411.

5.      Upon information and belief, Defendant Price 4 Charter Buses and Limos, LLC is a Florida limited liability company with its principal place of business at 990 Stinson Way, Suite 201, West Palm Beach, Florida 33411.

6.      Upon information and belief, Defendants Price For Limo, LLC and Price 4 Charter Buses and Limos are operating as one entity.

**JURISDICTION AND VENUE**

7.      As this action relates to unfair trade practices under the Lanham Act, 15 U.S.C. §1125(a), this Court has original jurisdiction over these claims under 28 U.S.C. §1331. As the federal claims are substantially related to state law claims, this Court also has supplemental jurisdiction over all state law claims under 28 U.S.C. §1367(a).

8.      This Court also has jurisdiction pursuant to 28 U.S.C., § 1332 because the Plaintiffs and Defendants are citizens of different states and Plaintiffs seek damages in excess of $75,000.00.

9. Venue is proper in this District under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in this district.

## FACTUAL BACKGROUND

10. Plaintiff Windy City is a legitimate charter carrier and one of the nation's fastest growing transportation service companies.

11. Since 2006, Plaintiff Windy City has steadily grown its business, winning numerous awards, and growing to operate a fleet of over 330 vehicles.

12. Plaintiff Windy City provides its transportation services throughout the Chicagoland area and competes based on its local reputation and competitive rates.

13. Plaintiff Aries is also a family-owned charter bus company that has been providing services in the charter bus industry for over thirty-five years.

14. For over two decades, Plaintiff Aries has been serving the Chicagoland area.

15. Plaintiff Aries operates a fleet of over sixty vehicles and has built its reputation based on its quality services.

16. Plaintiff Aries also competes in the same area as the other Plaintiff, based on its local reputation for being safe and reliable.

17. Upon information and belief, both Defendants are Florida-based limited liability companies and are transportation brokers. Further, it is believed that Defendants are acting in concert with one another or are the same company for all intents and purposes.

18. Upon information and belief, Defendants do not have a U.S. Department of Transportation (DOT) license or registration number to provide transportation services and carry passengers, like each of the Plaintiffs do. Instead, Defendants serve merely as a brokerage company.

3

19.     Defendants have created dozens of websites ("Offensive Websites") in which they hold themselves out to be local transportation companies that carry passengers. See Exhibit A for a list of known Offensive Websites targeting the Chicagoland area. However, the companies advertised on these Offensive Websites are fiction and there are no registered businesses or DBAs behind such Offensive Websites.

20.     These Offensive Websites list non-existent operating addresses and omit required DOT or carrier numbers, falsely presenting fictitious companies as actual motor carriers, rather than as fronts for a national broker.

21.     Further, almost every Offensive Website appears to have the same exact "form" to place an order, linking these fictious site, to Defendants. See Group Exhibit B, for examples of the same or similar order form on a sampling of various Offensive Websites.

22.     Phone calls to the local numbers listed on each Offensive Website also direct customers not to the local company, as advertised, but to Defendants, located in Florida.

23.     Many of these Offensive Websites do nothing more than generally state that their company address is in "Downtown Schaumberg, Illinois" or "Downtown Cicero, Illinois". See Group Exhibit C, for examples of the company address on a sampling of various Offensive Websites.

24.     Many of the Offensive Websites also falsely represent that Defendants own and operate charter buses and offer those buses for service locally when no such buses actually exist.

25.     Some of the Offensive Websites contain a small disclaimer admitting that the advertised company does not exist. The disclaimers are placed as non-searchable images at the bottom of the Offensive Websites, designed to avoid search engine and text searches and mislead consumers as to the true nature of the Offensive Websites.

26. On other Offensive Websites, there is not even a tiny disclosure on the bottom of the page and Defendants simply place a link to their own terms of service on the Offensive Websites.

27. Furthermore, on the Offensive Website with a domain name of "schaumburgcharterbuscompany.com", Defendants explicitly advertise for their "partner" Price4Limo. However, this is a false representation, as Defendants operate the Offensive Websites. They are not a partner or separate entity. See Exhibit D, screenshot from Schaumburg Charter Bus Company's home page.

28. Defendants conduct is intended to dupe search engines and consumers into believing these "companies" are local competitors, thereby undercutting legitimate businesses, like the Plaintiffs.

29. Beginning at least as early as December 2025, Plaintiff Windy City Transportation was contacted by sales representatives of Defendants, who offered jobs originating in Illinois.

30. Beginning at least as early as December 2025, Plaintiff Aries was also contacted by sales representatives of Defendants, who offered jobs originating in Illinois.

31. On information and belief, Plaintiffs received these offers to fulfill jobs based on referrals that customers believed were made through legitimate local charter bus companies, not a broker operating from Florida with no buses.

32. Plaintiffs expend significant sums of money advertising, promoting, and selling their transportation services.

33. Plaintiffs also spend significant sums of money maintaining their stellar reputation in the charter bus industry.

34. Rather than spending the time and resources to build up their reputation and properly advertise and promote their business, Defendants simply are creating dozens of these Offensive Websites falsely presenting themselves as local charter companies.

35. Defendants take the leads generated through the Offensive Websites and then bid the jobs out to local companies, hiring the lowest bidder to do the job and retaining a broker fee for themselves.

36. Defendants' Offensive Websites not only siphon business from legitimate local charter companies, like Plaintiffs, but they also depress prices that legitimate carriers charge across the industry.

37. However, this effect on prices is due to the illusion of competition created by Defendants and is not passed on to consumers. As Defendants capture more and more market share of internet leads generated through their Offensive Websites, they are able to force legitimate local carriers to compete for those jobs on price.

38. On information and belief, many of the local carriers hired by Defendants do not meet transportation industry regulatory requirements and safety standards. As an example, some of these companies do not carry the required insurance policies or limits, or do not perform required safety checks. By saving costs associated with regulatory and safety requirements, these companies are able to bid lower rates for jobs that would otherwise go to legitimate and compliant companies, like Plaintiffs.

39. Defendants' Offensive Websites perpetuate this scheme by obfuscating the true nature of their business and representing to consumers that they are purchasing transportation services from local companies when they are not.

6

40. Defendants' conduct creates a "race to the bottom" effect wherein legitimate local charter companies are not able to compete on reputation, safety, and quality service, as Plaintiffs have done for decades. Instead, local carriers must take shortcuts on safety and compliance to cut costs and obtain jobs from Defendants who falsely advertise their services.

41. Legitimate local transportation companies, like Plaintiffs, have therefore lost significant business and suffered a loss of profits due to the Offensive Websites.

**COUNT I**
**DIRECT UNFAIR COMPETITION PURSUANT TO 15 U.S.C. §1125(a)**
**(against All Defendants)**

42. Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 41 as if fully restated herein.

43. Defendants have made and continue to make false and/or misleading statements in commercial advertisements regarding the nature, characteristics, and qualities of their services.

44. Specifically, Defendants misrepresent the public that they are local transportation companies, like Plaintiffs, when in fact they are not.

45. These statements have been made in commercial advertising and interstate commerce, as evidenced by the numerous Offensive Websites that target the same customer base as Plaintiffs.

46. The false and misleading statements by Defendants are material, in that they are likely to influence the purchasing decisions of consumers.

47. Consumers would not purchase Defendants' services but for the false representations they are making through the Offensive Websites.

48. Defendants have caused these false and misleading representations of fact to enter interstate commerce.

49. Defendants' false and/or misleading statements are willful, wanton, and show a reckless disregard for Plaintiffs' rights while designed specifically to trade upon the consumer goodwill enjoyed by local companies such as Plaintiffs.

50. The goodwill of Plaintiffs' services is of enormous value, and unless Defendants are restrained from continuing its unfair competition, Plaintiffs will suffer irreparable injury.

51. As a direct and proximate result of Defendants' false advertising, Plaintiffs have suffered and will continue to suffer damages, including, but not limited to, lost sales, loss of market share, damage and injury to their business, reputation, and goodwill, with a loss of revenues and profits.

52. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants, as well as other remedies available under the Lanham act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

53. Likewise, Plaintiffs are entitled to compensation from Defendants for their past unfair competition.

### COUNT II
### CONSUMER FRAUD PURSUANT TO THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (against All Defendants)

54. Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 53 as if fully restated herein.

55. At all times relevant, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et. seq. ("Consumer Fraud Act") was in effect.

56. The Consumer Fraud Act states, in relevant part:

…[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretenses, false promise, misrepresentation or concealment, suppression or omission of any material fact…in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived, or damaged thereby.

815 ILCS 505/2

57. The Consumer Fraud Act provides that "any "any person who suffers actual damage as a result of the violation of the Act committed by any other person may bring an action against such person." 815 ILCS 505/10(a).

58. Beginning on or around 2012 Defendants began committing deceptive or unfair acts throughout the course of business by creating and maintaining each of the Offensive Websites.

59. These Offensive Websites deceive potential customers into believing these Offensive Websites advertise local transportation service companies, when in reality they are the product of a Florida transportation broker misrepresenting they are various different transportation companies.

60. Defendants are knowingly misrepresenting to customers that they are a local transportation company, intending to deceive and mislead customers as to the true identity of who is actually offering the services and operating the transportation vehicles.

61. Defendants intend that customers rely on their deceptive conduct when making charter transportation arrangements through these Offensive Websites.

62. This conduct occurred in the course of commerce.

63. Plaintiffs have suffered actual damages caused by the Defendants' deceptive practices.

9

64. Defendants' deceptive acts and misrepresentation involve consumer protection concerns. Consumers are reliant upon the skills and knowledge base of Defendants to provide their services in a good faith and reasonable manner within their expertise. Defendants' deceptive and fraudulent acts are capable of replication in other similar industries where services are provided for economic value.

65. Plaintiffs' relief will serve the interests of consumers generally by discouraging Defendants and others engaged in similar business markets from performing deceptive business acts. This will also increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest business practice in the state.

66. As direct and proximate results of Defendants' deceptions and misrepresentations, Plaintiffs have suffered damages including but not limited to at least $1,000,000 for lost sales and customers, lost business opportunity, and the consumer confusion due to the knowingly deceptive Offensive Websites.

67. There has been no attempt to remedy the situation, and it is abundantly clear that this is plain deception engaged in by the Defendants.

68. Because of Defendants' acts, Plaintiffs have suffered and will continue to suffer damage and injury to their business, reputation, and goodwill, with a loss of revenues and profits.

**COUNT III**
**DECEPTIVE TRADE PRACTICES PURSUANT TO THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT 815 ILCS § 510/1, *et seq.***
**(against all Defendants)**

69. Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 68 as if fully restated herein.

70. At all times relevant, there was in force and effect, the Illinois Uniform Deceptive Trade Practices Act (IDTPA).

71. As a result of the Offensive Websites, Defendants are likely to cause, and are causing, confusion or mistake, and are likely to deceive, and are deceiving, the public, in violation of the IDTPA.

72. Defendants' actions are likely to mislead, and are misleading, prospective customers as to an affiliation, connection, or association as to the origin, sponsorship, or approval of Defendants and their services, causing customers to rely thereon, in violation of the Deceptive Trade Practices Act.

73. Defendants have willfully engaged in deceptive trade practices by inventing fake business identities through the Offensive Websites.

74. Because of Defendants' acts, Plaintiffs have suffered and will continue to suffer damage and injury to their business, reputation, and goodwill, and will sustain loss of revenues and profits.

75. Unless enjoined by this Court, Defendants will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Plaintiffs, for which they have no adequate remedy at law.

**COUNT IV**
**UNFAIR COMPETITION**
**PURSUANT TO ILLINOIS COMMON LAW**
**(against all Defendants)**

76. Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 75 as if fully restated herein.

77. The aforesaid acts of Defendants constitute unfair competition in violation of Illinois common law.

78. The acts of Defendants were committed willfully, with the intention of deceiving and misleading the public and causing harm to Plaintiffs.

11

79. Defendants have unjustly obtained a benefit in the form of booking fees and commissions.

80. The retention of these benefits is unjust, as Defendants generated such benefits through deceiving customers, rather than by fair competition.

81. The unfair competition has caused injury to Plaintiffs in the form of lost sales and revenue, lost business reputation, and consumer confusion.

82. The unfair competition has also caused irreparable injury to the Plaintiffs.

83. Plaintiffs are therefore entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

84. Likewise, Plaintiffs are entitled to compensation from Defendants for their past unfair competition.

## COUNT V
## UNJUST ENRICHMENT PURSUANT TO ILLINOIS COMMON LAW
### (against all Defendants)

85. Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 84 as if fully restated herein.

86. The aforesaid acts of Defendants constitute unjust enrichment of Defendants at the expense of Plaintiffs in violation of Illinois common law.

87. Defendants conferred a substantial benefit by providing services to customers at the expense of Plaintiffs.

88. Defendants have knowingly accepted and retained services without objection, and derived full benefit from their misrepresentations to the public.

89. The benefits that Defendants have received and retained were at the expense of the Plaintiffs, who have incurred damage and injury to their business, reputation, and goodwill, with a loss of revenues and profits.

90. It would be unjust and inequitable for Defendants to keep the benefits without compensating Plaintiffs.

91. The reasonable value of services Defendants have unjustly and fraudulently taken away from Plaintiffs is at least $1,000,000.

## COUNT VI
## ANTITRUST VIOLATION PURSUANT TO 15 U.S.C. § 1, THE SHERMAN ACT
### (against all Defendants)

92. Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 91 as if fully restated herein.

93. Defendants have engaged in a contract, combination, or conspiracy in restraint of trade by acting in concert and jointly coordinating the creation, operation, and maintenance of dozens of interconnected Offensive Websites that present a unified false appearance of multiple local charter bus companies in order to steer charter transportation bookings to Defendants' brokerage and away from legitimate motor carriers, including Plaintiffs.

94. Upon information and belief, Defendants are Florida-based brokerage entities that act in concert with one another or operate as the same company for all intents and purposes.

95. Defendants' coordinated scheme includes: (a) creating and operating dozens of Offensive Websites falsely holding themselves out as local transportation companies; (b) listing non-existent operating addresses and omitting required DOT or carrier numbers to misrepresent broker services as carrier services; (c) concealing the brokerage role in fine print or hyperlinks while soliciting interstate bookings; and (d) directing resulting leads and jobs to Defendants for a

brokerage commission rather than to legitimate local carriers competing on safety, compliance, and reputation.

96. Defendants' combination and concerted conduct unreasonably restrain trade in the market for charter bus transportation services in the Chicagoland area by diverting consumer demand and bookings through deceptive, coordinated misrepresentations that foreclose and undercut legitimate competition by local carriers, including Plaintiffs.

97. The coordinated misrepresentation of broker services as local carrier services across dozens of Offensive Websites constitutes an unfair method of steering and diverting demand that suppresses competition on the merits and deceives consumers, thereby unreasonably restraining trade among competing providers of charter bus transportation services in the Chicagoland area.

98. Plaintiffs are direct competitors in the relevant market for charter bus transportation services in the Chicagoland area, and they have suffered lost sales, market share, revenues, and damage to business goodwill proximately caused by Defendants' concerted deceptive steering scheme; Plaintiffs' injuries flow from the anticompetitive effects of the restraint and are of the type the antitrust laws were intended to prevent.

99. As a direct and proximate result of Defendants' violation of Section 1 of the Sherman Act, Plaintiffs have suffered and will continue to suffer injury to their business and property, including lost sales, lost profits, loss of market share, and harm to reputation and goodwill, in an amount to be proven at trial.

## COUNT VI
## ANTITRUST VIOLATION PURSUANT TO 15 U.S.C. § 2, THE SHERMAN ACT
### (against all Defendants)

100. Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 99 as if fully restated herein.

14

101. The relevant product market is charter bus transportation services sold to customers seeking group passenger ground transportation, including bookings arranged through online search and lead-generation channels.

102. Plaintiffs are legitimate charter carriers competing to provide charter bus services based on safety, compliance, reputation, and competitive rates.

103. The relevant geographic market includes the Chicagoland area, where Plaintiffs have operated and competed for decades and where Defendants have targeted and funneled bookings through their Offensive Websites and sales outreach.

104. Defendants possess, or there is a dangerous probability that Defendants will achieve, monopoly power in the relevant market by controlling a critical demand funnel and excluding rivals through deception and foreclosure.

105. Defendants have created dozens of deceptive Offensive Websites that hold themselves out as local charter bus companies in Chicagoland, listing non-existent local addresses and omitting required DOT or carrier numbers, and only disclosing broker status in obscure fine print or hidden terms.

106. This network is intended to dupe search engines and consumers into believing these purported companies are local carriers, diverting demand away from legitimate local competitors like Plaintiffs and steering bookings into Defendants' controlled pipeline.

107. Beginning on or around December 2025, Defendants' sales representatives contacted Plaintiffs with offers to fulfill Illinois-originating jobs that customers believed were placed with local carriers, evidencing Defendants' control over substantial booking volume in the area.

108. Legitimate local transportation companies, including Plaintiffs, have lost significant business due to this deceptive scheme.

109. Barriers to entry and expansion in the market include regulatory compliance, the need for fleets and safety credentials, and development of local reputation. Defendants bypass these by misrepresenting themselves as local carriers through their network of Offensive Websites.

110. Defendants willfully acquire and/or maintain market power not by superior product or business acumen, but through exclusionary, deceptive practices that impair rivals' ability to compete on the merits.

111. Defendants are Florida-based transportation brokers without DOT authority to operate as motor carriers, yet they present themselves through numerous local-branded Offensive Websites as Chicago-area carriers that own and operate charter buses that do not exist.

112. Defendants' misrepresentations induce customers to book under the false belief they are dealing with local carriers, allowing Defendants to intercept, steer, and allocate bookings away from Plaintiffs and other local competitors and to foreclose rivals from access to customers at the point of search and initial inquiry.

113. Defendants conceal their broker role in fine print or buried hyperlinks while populating these Offensive Websites with false local addresses and generic "downtown" location claims, thereby deceiving both consumers and search algorithms and crowding out legitimate competitors in search results and lead flows.

114. Defendants have monopolized the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, by willfully acquiring and maintaining monopoly power through deceptive and exclusionary practices rather than through lawful competition.

16

115. Alternatively, Defendants have attempted to monopolize the relevant market in by engaging in predatory or anticompetitive conduct through their deceptive network of Offensive Websites, misrepresentations of carrier status, and diversion of bookings.

116. Defendants are acting with specific intent to monopolize by designing their scheme to dupe search engines and consumers into channeling demand away from legitimate local carriers and into Defendants' controlled pipeline.

117. There is a dangerous probability that Defendants will achieve monopoly power given their control over the Offensive Websites and the resulting funneling, diverting, and foreclosing evidenced by lost business to legitimate local carriers, including Plaintiffs.

118. As a direct and proximate result of Defendants' exclusionary conduct, Plaintiffs have lost sales, customers, and business opportunities, and suffered harm to their reputation and goodwill, including at least $1,000,000 in damages. These injuries flow from the reduction of competition and diversion/foreclosure caused by Defendants' deceptive scheme, and they are the type of harm the antitrust laws were intended to prevent.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment against Defendants as follows:

A. Finding that: (i) Defendants have violated 15 U.S.C. § 1125(a); (ii) Defendants have committed consumer fraud and deceptive business practices under 815 ILCS 505/1, *et seq.;* (iii) Defendants have committed deceptive trade practices under 815 ILCS § 510/1, *et seq.;* (iv) Defendants have committed unfair competition under Illinois common law; (v) Defendants have unjustly enriched themselves at the expense of Plaintiffs; and (vi) Defendants have violated 15 U.S.C. § 1 and § 2 of the Sherman Act, by monopolization, or in the alternative attempted

17

monopolization.

B.      Granting an injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C § 1116, 815 ILCS 505/7, *et seq.,* 815 ILCS § 510/3, and 15 U.S.C. § 26, preliminarily and permanently restraining and enjoining Defendants, their officers, agents, and employees, and attorneys, and all those persons or entities in active concert or participation with them from:

1.  Advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any goods or services in conjunction with the offensive sites;

2.  Engaging in any other activity constituting unfair competition with Plaintiff, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of the offensive sites;

3.  Continuing the concerted conduct described herein, including operating or using the Offensive Websites to misrepresent broker services as local carrier services and from otherwise engaging in coordinated deceptive practices that restrain trade.

C.      Requiring Defendants to file with this Court and serve on Plaintiff within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

D.      Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any services at issue in this action that have been marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants, are offered by local transportation companies;

E.      Awarding Plaintiffs actual damages to which they are entitled under applicable federal and state laws;

F.      Awarding Plaintiffs costs and attorney fees under 815 ILCS § 510/3 and 15 U.S.C.

18

§ 15;

G.     Awarding Plaintiffs statutory damages pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 15, or in the alternative their actual damages suffered as a result of Defendants' actions;

H.     Awarding Plaintiffs prejudgment interest on any monetary award made part of the judgment against Defendants; and

I.     Awarding Plaintiffs such additional and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby respectfully request trial by jury under Rule 38 of the Federal Rules of Civil Procedure of all issues in this action so triable.


Dated: June 24, 2026


Respectfully Submitted,

/s/ Sean M. Sharp
Sean Sharp (#6313964)
Kennedy Snyder (#6349995)
Atom Law Group, LLC
770 N. LaSalle Dr., Suite 700
Chicago, Illinois, 60654
(P) 312-493-8000
(F) 312-943-4984
ssharp@atom.law
ksnyder@atom.law
ATTORNEYS FOR PLAINTIFFS

## VERIFICATION BY ECHO WINDY CITY TRANSPORTATION, LLC

I, George Jacobs, declare as follows:

1.      I am the CEO for Plaintiff Echo Windy City Transportation, LLC ("Windy City"), am a duly authorized agent for Windy City, and have read the foregoing Verified Complaint for Injunctive Relief and Damages.

2.      If called to testify, I would competently testify as to the matters stated in the Verified Complaint for Injunctive Relief and Damages.

3.      I verify under 28 U.S.C. § 1746, under penalty of perjury, and under the laws of the United States of America that the factual statements in Verified Complaint for Injunctive Relief and Damages concerning Windy City, Windy City's actions, and the harms it has suffered and/or will suffer are true and correct.

Dated this Jun 24, 2026 day of June, 2026.

box SIGN          4P8LLVX3-1RPV7WWL
George Jacobs

20

## VERIFICATION BY ARIES CHARTER TRANSPORTATION, INC.

I, Ralph Trevino, declare as follows:

4.      I am the President for Plaintiff Aries Charter Transportation, Inc. ("Aries"), am a duly authorized agent for Aries, and have read the foregoing Verified Complaint for Injunctive Relief and Damages.

5.      If called to testify, I would competently testify as to the matters stated in the Verified Complaint for Injunctive Relief and Damages.

6.      I verify under 28 U.S.C. § 1746, under penalty of perjury, and under the laws of the United States of America that the factual statements in Verified Complaint for Injunctive Relief and Damages concerning Aries, Aries's actions, and the harms it has suffered and/or will suffer are true and correct.


Dated this Jun 24, 2026 day of June, 2026.

box SIGN          1RYPPR86-1RPV7WWL

Ralph Trevino

21